In the Matter of UNIVERSITY GREENS, INC., Debtor.

Bankruptcy No. 86–2.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 2, 1986.

Robert Messick, Sarasota, Fla., for movant.

Daniel Joy, Sarasota, Fla., for debtor.

## ORDER ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND/OR ADEQUATE PROTECTION PAYMENT

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 case is the Motion for Relief from the Automatic Stay filed by Crossland Savings, FSLA (Crossland). The Court has considered the record, the testimony of witnesses, and the argument of counsel, and finds as follows:

University Greens, Inc., the Debtor in the above captioned case, owns a thirty-six acre tract of undeveloped land in Manatee County, Fla., which is encumbered by three mortgages, two of which, the first and the third, are held by Crossland. In October of 1985, Crossland sought and obtained a summary final judgment of foreclosure on both of its mortgages in the combined amount of $2,422,492.70. The holder of the second mortgage on the property, F.P.A. Corp., obtained a foreclosure judgment in November of 1985 in the amount of $368,-132.51. A foreclosure sale was set for January 7, 1986, but the sale was stayed by the filing of the Debtor's petition in bankruptcy on January 2, 1986. As of April 23, 1986, the total indebtedness encumbering the property, including accrued interest, was $2,942,459.84.

Crossland seeks relief from the automatic stay under § 362(d)(1) of the Bankruptcy Code on the ground that the Debtor cannot provide Crossland adequate protection of its interest in the property, therefore it is entitled to the relief sought pursuant to § 362(d)(1). In the alternative, Crossland

seeks relief under § 362(d)(2) on the grounds that there is no equity in the property and that it is not needed for effective reorganization. The Debtor concedes that it is not able to make adequate protection payments, but contends that there is a one-half million dollar equity cushion in the property, and that the Debtor has two pending contracts for sale of separate parcels of the thirty-six acres which would, upon closing, net the Debtor sufficient funds to satisfy the mortgages on the property.

In support of its motion to lift the stay, Crossland presented uncontroverted testimony that the fair market value of the property is substantially less than the amount of debt currently encumbering the same. Mr. John C. Irvan, Jr., a certified appraiser and real estate broker, reviewed comparable tracts of land in the same area and also reviewed the two pending sales contracts. Based on the value of the comparable properties and on the assumption that the land would be developed at a density of 436 units, a contingency of the sales contracts, Mr. Irvan concluded that the fair market value of the tract is $2,216,800, or approximately $85,000 per developable acre.

The Debtor maintains that there are two contracts for sale of separate parcels of the encumbered property which would, upon closing, provide sufficient funds to pay off the liens of Crossland and F.P.A. Corp. A close examination of these two contracts reveals that the liklihood of either of these contracts ever closing is remote if not nil.

A contract for twenty-two of the thirty-six acres with Ralph Bodziak, a local developer, includes a provision that if Bodziak determines that the property is not suited to its intended use to his sole satisfaction, he may terminate the contract. Testimony by Mr. Bruce Franklin, a expert in land use and development, was that the property is best suited for residential development at a moderate density of 7–8 units per acre and that, given the current zoning regulations in Manatee County, and the set-back in building height restrictions, it would not be possible to develop the property at 16 units per acre without a waiver from the Manatee County Board of County Commissioners. This same contract is also contingent upon a preliminary site plan approval by Manatee County, a process that Mr. Franklin testified could take up to 6 months because of the significant problems with this particular property. Mr. Irvan also testified that developing the property at a density of 436 units would be very difficult, as such density requires developing 16 units on each acre, a density that, given the set-back restrictions and forest preserve restrictions, would be difficult to accomplish.

A second contract for sale of the remaining 14 acres of the thirty-six acre tract is with Care, Inc. (Care), a corporation that desires to build a multi-story 220 retirement center on the property. In addition to the contingency that Care obtain preliminary site plan approval, there is a contingency that Care be able to arrange project financing on terms satisfactory to Care, presumably including 100% financing, or Care shall have the absolute option to terminate the contract.

The uncontroverted evidence shows that this property's debt exceeds its fair market value by at least $700,000, and that the contracts for sale of the property contain so many contingencies that it is highly unlikely that either of them will close within a reasonable time, if ever. Based on the foregoing, this Court is satisfied that the Debtor is unable to furnish adequate protection; that there is no equity in this property; and that this property is not needed for effective reorganization.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Relief from the Automatic Stay be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the automatic stay is lifted for the sole purpose of allowing the movant to complete its foreclosure sale, and movant shall not seek or obtain an in personam deficiency judgment against the Debtor.